BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Acting Assistant United States Attorney
Chief, Criminal Division
GREGORY S. SCALLY (Cal. Bar No. 268073)
Assistant United States Attorney
Deputy Chief, Orange County Office
GREGORY W. STAPLES (Cal. Bar No. 155505)
Assistant United States Attorney
Orange County Office
     8000 United States Courthouse
     411 West Fourth Street
     Santa Ana, California 92701
     Telephone: (714) 338-3532/35
     Facsimile: (714) 338-3708
     E-mail:    gregory.scally@usdoj.gov
                greg.staples@usdoj.gov
CHRISTOPHER MATTHEWS (New Jersey Bar No. 028571998)
GRACE BOWEN (Virginia Bar No. 96894)
Trial Attorneys
United States Department of Justice
Violent Crime and Racketeering Section
     1301 New York Avenue, NW, Suite 700
     Washington, D.C. 20005
     E-mail:    christopher.matthews@usdoj.gov
                grace.bowen2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 8:22-00034(A)-FWS-4 |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT ROBERT MARTINEZ'S MOTION FOR ORDER DISMISSING INDICTMENT WITH PREJUDICE DUE TO GOVERNMENT'S FAILURE TO FUND CJA DEFENSE (DKT No. 2063) |
| v. | |
| JOHNNY MARTINEZ et al., | |
| Defendants. | Hearing Date: November 20, 2025<br>Hearing Time: 2:30 p.m.<br>Location:    Courtroom of the Hon. Fred W. Slaughter |

Plaintiff United States of America, by and through its counsel of record, the First United States Attorney for the Central District of California and Assistant United States Attorneys Gregory S. Scally and Gregory W. Staples, and United States Department of Justice Trial Attorneys Christopher Matthews and Grace Bowen, hereby files its Opposition to Defendant Robert Martinez's Motion for Order Dismissing Indictment With Prejudice Due to Government's Failure to Fund CJA Defense.

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 7, 2025

Respectfully submitted,

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

_____/s/_____
GREGORY S. SCALLY
GREGORY W. STAPLES
Assistant United States Attorneys

CHRISTOPHER MATTHEWS
GRACE BOWEN
Trial Attorneys
Violent Crime and Racketeering Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

TABLE OF AUTHORITIES...................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES....................................1

I.   INTRODUCTION.......................................................1

II.  STATEMENT OF FACTS.................................................1

III. ARGUMENT:  DEFENDANT FAILS TO IDENTIFY ANY VIOLATION –
     CONSTITUTIONAL OR STATUTORY – THAT WOULD BE A BASIS FOR
     DISMISSING THE INDICTMENT..........................................2

     A.   The lapse in CJA funding does not violate the Sixth
          Amendment.....................................................3

     B.   Any delay in counsel's receipt of compensation under
          the CJA does not amount to a violation of the CJA,
          much less a violation of the Sixth Amendment or
          Structural Error..............................................6

     C.   Even if defendant could establish a violation of his
          rights, dismissal would not be proper.........................8

IV.  ADDITIONAL DEFENDANTS' JOINDERS...................................10

V.   CONCLUSION........................................................10

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

**No table of authorities entries found.Statutes**

18 U.S.C. § 1959..........................................1, 2, 5, 6
18 U.S.C. §§ 1961 through 1968...................................2, 8
Cal. Pen. Code Sec. 664............................................11
Cal. Pen. Code Sections 187.................................... 6, 11
California Penal Code §§ 21A..................................passim

**Rules**

Fed. R. Crim. P. 12(b)(3)(B)(v)................................ 3, 5

**Other Authorities**

129 Cong. Rec. 22, 906 (9th Cong. 1st Sess. Aug. 4, 1983)....... 5, 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant ROBERT MARTINEZ ("defendant") moves to dismiss the charges pending against him in the Indictment and First Superseding Indictment ("FSI") on the grounds that the lapse in funding to compensate defense counsel appointed under the Criminal Justice Act ("CJA") amounts to a violation of the right to counsel established by the Sixth Amendment ("Motion" or "Mot.")  There is no dispute that defendant has been, is and remains represented, and the Motion does not identify any way in which the representation has been impaired by the funding lapse.  Accordingly, there is no Sixth Amendment violation.  Indeed, because his appointed counsel's compensation is not being denied but only delayed, there is no CJA violation, either.  And even if there were some violation, the appropriate remedy would be a continuance – not the unprecedented remedy of dismissal with prejudice that defendant requests.

Defendant's Motion to dismiss should be denied.

**II.   STATEMENT OF FACTS**

Defendant is charged in the following counts of the FSI:

- Count One, alleging a violation of RICO Conspiracy, 18 U.S.C. § 1962(d);
- Count Seven, alleging a violation of VICAR Attempted Murder and Assault with a Dangerous Weapon, in violation of 18 U.S.C. §§ 1959(a)(5), (a)(3), 2(a), in connection with the shooting of Gregory Munoz;
- Count Eight, alleging a violation of Using and Carrying a Firearm During and in Relation to, and Possession of a Firearm in Furtherance of, a Crime of Violence, and Brandish

and Discharge of a Firearm, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii), 2(a), also based on the shooting of Gregory Munoz; and

- Count Fifteen, alleging a violation of VICAR Attempted Murder and Assault with a Dangerous Weapon, in violation of 18 U.S.C. §§ 1959(a)(5), (a)(3), 2(a), based on an attack on Michael Cooper inside a jail facility.

(Dkt. No. 25.)

Defendant made his initial appearance on May 4, 2022. (Dkt. No. 158.) Current counsel was appointed under the CJA on that date. (*Id.*) Defendant has frequently requested that the date for his trial, originally set for June 2022, be continued. (*See, e.g.*, Dkt. Nos. 223, 589 (referring to stipulation filed on March 10, 2023), 1236, 1585, 2048.). Defendant's trial, along with that of seven co-defendants, is currently set for August 4, 2026. (Dkt. No. 2049.)

**III. ARGUMENT: DEFENDANT FAILS TO IDENTIFY ANY VIOLATION — CONSTITUTIONAL OR STATUTORY — THAT WOULD BE A BASIS FOR DISMISSING THE INDICTMENT**

In his Motion, defendant argues that CJA attorneys have been "working without compensation since early July 2025" and this "funding crisis," when "combined with an ongoing shutdown of the federal government that has no end in sight" warrants dismissal of the charges against him with prejudice. (Mot. at 5.[1]) Defendant contends that the government has violated the CJA, whose provisions are "a core underpinning of the statute's embrace of Sixth Amendment principles under *Gideon* [*v. Wainwright*, 372 U.S. 335 (1963)]" (Mot. at 12), and the "constitutional ramifications of the government's

---

[1] The page numbers refer to the page numbers in the headers applied by PACER to the filed document.

2

violation of the CJA extend into the realm of structural error" (Mot. at 13).

As explained more fully below, the lapse in CJA funding does not create a violation of the Sixth Amendment, much less a violation so severe as to constitute structural error.

### A. The lapse in CJA funding does not violate the Sixth Amendment

The Sixth Amendment does not require that court-appointed counsel be compensated. *Gideon v. Wainwright*, 372 U.S. 335 (1963), establishes that indigent defendants have a right to court-appointed counsel, and *Strickland v. Washington*, 466 U.S. 668 (1984), mandates that defendants receive effective assistance of counsel. However, there is nothing in the Constitution, and nothing in *Gideon*, *Strickland*, or their progeny, requiring that counsel receive compensation for representing an indigent criminal defendant.

Indeed, numerous federal courts have repeatedly held that court-appointed counsel do not have any constitutional right to compensation. *See, e.g.*, *Scheehle v. Justs. of Supreme Ct. of Ariz.*, 508 F.3d 887, 894-95 (9th Cir. 2007) ("The position that any imposition on an attorney's time must be compensated is foreclosed by our prior opinions." (cleaned up); *see also United States v. Vasquez*, 2:25-CR-00135-WBS, Eastern District of California (opinion attached as Exhibit A) (collecting cases). In *United States v. Dillon*, the Ninth Circuit held that there was "an obligation on the part of the legal profession to represent indigents upon court order, without compensation." 346 F.2d 633, 635 (9th Cir. 1965), *cert. denied*, 382 U.S. 978 (1966); *see also Vasquez*, Ex. A (summarizing further case

3

law to the effect that there is no constitutional right to compensation in these circumstances).

Here, defendant has been and continues to be represented by counsel. True, counsel's compensation has been delayed by the lapse in CJA funding. But such a delay does not change the fact that defendant remains represented. Indeed, the Ninth Circuit maintains a presumption that a lawyer "will subordinate his pecuniary interests and honor his primary professional responsibility to his clients in the matter at hand." *United States v. Walter-Eze*, 869 F.3d 891, 902 (9th Cir. 2017). There is no reason to believe that counsel here has violated his obligation to follow this professional responsibility. Nor has counsel stated, in a declaration or otherwise, that he will violate his ethical obligations to his client and refuse to continue to represent his client unless he is paid immediately.

Defendant's Motion implies that defendant has experienced a "complete deprivation of counsel," which defendant then equates to structural error. (*See* Mot. at 14.) But nothing about the circumstances here amounts to a deprivation of counsel, complete or otherwise, let alone structural error. Indeed, defendant's Motion does not identify any way in which the lapse in CJA funding has adversely affected counsel's representation of defendant.

The cases cited by defendant do not compel – or even suggest – a different result. *Gideon v. Wainwright* provides a defendant with the right to counsel, which this defendant has. 372 U.S. 335 (1963).[2]

---

[2] In a distinction that does not matter here, *Gideon* actually provided for the right to counsel in state courts, whereas an earlier decision provided for the right to counsel in federal court. *See Gideon*, 372 U.S. at 340, n.3 (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938)).

4

*Arizona v. Fulminante*'s recognition of the structural error present in the "total deprivation of the right to counsel at trial," where "the criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence," bears no relation to the instant case, where defendant has been zealously represented for more than three years and will be represented at his trial next August. 499 U.S. 279, 309, 310 (1991). *King v. Soto* merely discusses *Fulminante* in the context of other alleged trial errors. 2017 WL 2404982, *5-*6 (N.D. Cal. June 2, 2017). And in *Knoller v. Miller*, the district court merely distinguished *Fulminante* on the grounds that "limiting an attorney's role or ability to object during a portion of the closing argument" does not amount to structural error where it is "essentially irrelevant" because it does not involve the absence of counsel for a criminal defendant "from *beginning to end*." 2014 WL 3107770, *13 (N.D. Cal. July 3, 2014) (emphasis in original). Here, there has been *no* absence of counsel whatsoever.

Moreover, even if a delay in paying counsel somehow amounted to a deprivation of the right to counsel for a defendant who was nonetheless represented, it would not rise to the level of structural error. Even greater denials or absences of counsel have been held to not amount to structural error. *See, e.g.*, *Coleman v. Alabama*, 399 U.S. 1, 10-11 (1970) (counsel's absence during preliminary hearing subject to harmless error analysis); *Pizzuto v. Arave*, 280 F.3d 949, 969 (9th Cir. 2002) (counsel's absence during pre-sentence interview after capital murder trial harmless error because ample independent evidence of defendant's lack of remorse existed); *Siverson v. O'Leary*, 764 F.2d 1208, 1219-20 (7th Cir. 1985) (counsel's absence during jury deliberations and return of verdict harmless error

because, though counsel missed opportunity to poll jurors, nothing in record implied verdict irregularity that may have been revealed by poll); *Sweeney v. United States*, 766 F.3d 857, 861 (8th Cir. 2014) (counsel's absence for 3 minutes during witness testimony harmless error because witness revealed nothing new and counsel was still able to effectively cross-examine); *United States v. Lott*, 433 F.3d 718, 723 (10th Cir. 2006) (counsel's absence from evidentiary hearing harmless error because it did not result in "loss of any identified right").

        **B.    Any delay in counsel's receipt of compensation under the CJA does not amount to a violation of the CJA, much less a violation of the Sixth Amendment or Structural Error**

Defendant's Motion is premised on the government's alleged "failure to fund CJA defense" in violation of the CJA. (Mot. at 16.) But there has never been a denial of funding – funding has just been delayed.[3] As the Central District of California states on its website, "CJA panel attorneys ... will remain in a non-pay status *until appropriations are restored*." Notice from the Central District of California, https://www.cacd.uscourts.gov/news/notice-central-district-california (last visited Oct. 20, 2025) (emphasis added). The Notice continues: "CJA attorneys should continue to submit vouchers for payment," and further states that "[t]he vouchers ... will be given priority once the Judiciary receives funding." *Id.*; *see also* United States Courts: Defender Services, *CJA Panel Attorney*

---

[3] Defendant attempts to avoid this fact by asserting that the lapse must be viewed in "combin[ation] with an on-going shutdown of the federal government that has no end in sight" and arguing that "the impact of nonpayment, coupled with the lack of foreseeable resolution, has risen to the level of deprivation of counsel." (Mot. at 5, 15.) This hyperbole ignores that fact that all prior government shutdowns have been resolved.

6

*Funds Information FY 2025* (updated Oct. 6, 2025), https://www.uscourts.gov/about-federal-courts/defender-services/cja-panel-attorney-funds-information-fy-2025 (last visited Oct. 20, 2025) (providing that attorney payments are deferred). Accordingly, once Congress funds the government, CJA-appointed counsel will be entitled to receive their reimbursements. Contrary to defendant's claim, then, there is no "statutory violation of the CJA." (*See* Mot. at 12.)

Additionally, CJA-appointed counsel typically submit vouchers requesting reimbursement following the conclusion of their representation. This case has not concluded, and the government has no information as to whether counsel has yet submitted any vouchers. Moreover, it is the court, not the government, that determines whether, how much, and when the attorney shall be paid. *See United States v. Feldman*, 788 F.2d 625, 626 (9th Cir. 1986). Thus, according to typical practice, in this case, counsel for defendant would not have received payment by now anyway, and given who determines the timing of such payment, the "government" can by no means be said to be a "singular entity that speaks with one voice" such that the Department of Justice is lumped in with separate branches of government and deemed on that basis to have violated the CJA. (*See* Mot. at 12.) In sum, the case against defendant is ongoing, and defendant has identified no actual denial of compensation to his attorney warranting a remedy of any sort, let alone the drastic remedy of dismissal.

### C. Even if defendant could establish a violation of his rights, dismissal would not be proper

As explained above, defendant has not established any violation of his rights - statutory, constitutional, or otherwise. But even assuming *arguendo* that the lapse in funding resulted in a cognizable violation of defendant's rights,[4] dismissal would not be the proper remedy.

If defense counsel could articulate specific derogations of his ability to adequately represent defendant in the upcoming trial due to a lack of currently available CJA funds, the remedy might be a continuance of the trial date.[5] *Cf. United States v. Abpikar*, 583 Fed. Appx. 780, 781 (9th Cir. 2014) (no speedy trial violation where continuance was based on the fact that relatively new counsel was still receiving discovery and needed more time to prepare). But here, even this remedy is unnecessary, given that defendant has failed to point to any way the lack of CJA funds has impeded his defense. *Cf. United States v. Rosalez-Lopez*, 617 F.2d 1349, 1356 (9th

---

[4] To the extent defense counsel believes his own rights are being violated by the payment delays, his remedy is withdrawal from the representation, although a motion to withdraw under these circumstances would be unlikely to succeed as "[n]on-payment of legal fees, without more, is not usually a sufficient basis to permit an attorney to withdraw from representation." *United States v. Vilar*, 731 F.3d 255, 257 (2d Cir. 2013). Any claim based simply on a delay in payment to counsel, *i.e.*, a claim shorn of any Sixth Amendment trappings, cannot be brought by defendant, who would lack standing.

[5] Defendant cannot complain that, if he could establish a violation of his rights, remedying such violation through a continuance would mean violating his right to a Speedy Trial. Defendant has already stipulated to continuances of the trial totaling approximately four years. It would be well within the Court's discretion to find that a short further continuance was excludable time because, where such a continuance was granted to allow defense counsel to obtain and use CJA funds in specific, identifiable ways to assist in establishing a defense, the ends of justice would outweigh the best interest of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(7)(A).

8

Cir. 1980) (failure to provide CJA funds for transcript of pretrial suppression hearing was harmless because lack of hearing transcript did not prejudice ability of the defense to cross-examine effectively and thereby present an adequate defense at trial).

Dismissal of the indictment, as defendant requests, is unwarranted. To begin with, the standard governing dismissal of indictments is simply not met here. "A district court may dismiss an indictment under its inherent supervisory powers (1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct." *United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir. 2020) (citation and quotation marks omitted). Here, none of these prerequisites is met. First, as stated above, there is no "recognized statutory or constitutional right" that has been violated that requires implementation of a remedy. Second, the deferral of CJA funding does not implicate what considerations are before a jury. And third, there is no "illegal conduct" by the government to deter here.

Defendant invokes a dismissal purpose wholly absent from the law: to "send a loud message to those who hold the purse strings in Washington, D.C." (Mot. at 16.) None of a district court's inherent supervisory powers to dismiss an indictment may be used to achieve such a purpose. The reasons for the limitations on the district court's authority to dismiss indictments under its inherent supervisory powers are clear: "Dismissal of an indictment with prejudice necessarily implicates separation-of-powers principles." *United States v. Isgro*, 974 F.2d 1091, 1097 (9th Cir. 1992). "Such

dismissal exercised under the guise of 'supervisory power' is impermissible absent 'a clear basis in fact and law for doing so.'" *Id.* Defendant presents no such basis in fact and law here.

**IV.  ADDITIONAL DEFENDANTS' JOINDERS**

Defendants AGUIRRE (ECF 2079), ORTIZ (ECF 2080), VALENZUELA (ECF 2082), MUNOZ (ECF 2083), CORDOVA (ECF 2084), VASQUEZ (2085), and JOHNNY MARTINEZ (ECF 2086) have all joined defendant's motion.  None of them articulate any meaningful impairment to their defense, let alone one that would warrant dismissal, and every argument above applies to each defendant who has joined.

**V.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's Motion to dismiss the charges pending against him, and to deny the motions for dismissal of their charges lodged by each of the joining defendants.